IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02311-KLM

TIMOTHY GARCIA,

   Plaintiff,

v.

NANCY A. BERRYHILL, in her official capacity as Acting Commissioner of Social Security,

   Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record** [#11],[2] filed November 14, 2016, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., and for supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381 et seq. On December 26, 2016, Plaintiff filed an Opening Brief [#15] (the "Brief"). Defendant filed a Response [#19] in opposition, and Plaintiff filed a Reply [#20]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§

---

   [1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#13, #21].

   [2] "[#11]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

405(g) and 1383(c). The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

**I. Background**

Plaintiff alleges that he became disabled at the age of forty on June 30, 2007. Tr. 30, 43.[3] On December 12, 2013, Plaintiff filed applications for disability insurance benefits under Title II and for supplemental security income under Title XVI. Tr. 30. On April 25, 2016, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 44.

The ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2012, and that Plaintiff had not engaged in substantial gainful activity ("SGA") since June 30, 2007, the alleged onset date. Tr. 32. The ALJ found that Plaintiff suffers from four severe impairments: (1) obesity; (2) syncope episodes; (3) depression; and (4) anxiety. Tr. 32. However, the ALJ also found that these impairments, individually or in combination, do not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 33-35. The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform medium work with the following limitations:

> [H]e has no limitations in sitting, lifting, or carrying; he can frequently stand and occasionally walk. The claimant can occasionally bend, stoop, kneel, crouch, and crawl. He must avoid unprotected heights, driving, operating dangerous machinery, and climbing ladders, ropes, and scaffolds. The

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 11 through 11-26 by the sequential transcript numbers instead of the separate docket numbers.

claimant can understand, remember, and carry out simple 2-3 step instructions an[d] can complete a normal workday and workweek without interruption and can work at a consistent pace. He can sustain superficial noncollaborative interactions, supervisors, and the general public, and he is capable of adapting to changes in pressures in the workplace if changes are occasional and pressure is frequent or less.

Tr. 35. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could perform no past relevant work, but that he was able to perform the representative occupations of small parts assembler, mailroom clerk, and office helper. Tr. 43. She therefore found Plaintiff not disabled at step five of the sequential evaluation. Tr. 44. The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically

acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*" *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.    Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ erred in two ways in her decision. *Brief* [#15] at 2. First, Plaintiff argues that the ALJ did not give sufficient weight to the medical opinions in the record. *Id.* Second, Plaintiff argues that the ALJ did not offer a sufficient explanation for rejecting Plaintiff's testimony. *Id.* The Court begins with the second argument.

**A.    Plaintiff's Testimony**

At the outset, the Court notes that on March 28, 2016, Social Security Ruling 96–7p was superseded by Social Security Ruling 16–3p. The new Ruling eliminates the term

"credibility" from the Administration's sub-regulatory policy. The ALJ's decision in this case was issued on April 25, 2016, *see* Tr. 44, and therefore the Court examines the issue of the ALJ's evaluation of Plaintiff's testimony pursuant to Social Security Ruling 16–3p. The Court notes, however, that the regulations governing the evaluation of a claimant's testimony have not changed, and despite elimination of the term "credibility," the analysis appears to be materially the same, i.e., determining whether the claimant's testimony, daily activities, medication use, etc., are consistent with the objective medical record, the opinions of medical professionals, etc., such that a finding of disability based on the intensity, persistence, and limiting effects of the claimant's symptoms is warranted under the Act. *See, e.g.*, 20 C.F.R. § 416.929.

Plaintiff argues that the ALJ failed to provide sufficient reasoning for rejecting Plaintiff's testimony about his pain. *Brief* [#15] at 36-37. Regarding the evaluation of whether pain is disabling, an ALJ must consider:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Brownrigg v. Berryhill*, 688 F. App'x 542, 545 (10th Cir. 2017) (quoting *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). In conducting this analysis, the ALJ considers a variety of factors, including "a claimant's persistent attempts to find [pain relief] and [his] willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor . . . and the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Brownrigg*, 688 F. App'x at 545 (quoting *Keyes–Zachary*, 695 F.3d at 1167). The ALJ's

analysis does not need to formally address each factor, "but the substance must be there." *Brownrigg*, 688 F. App'x at 546 (citing *Keyes-Zachary*, 695 F.3d at 1167).

The ALJ held that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 36. After a lengthy discussion of the record, the ALJ stated:

> The claimant's allegations of restrictions and symptoms related to his impairments are not entirely consistent with the objective medical assessments of record. Although the claimant repeatedly complains of severe traumatic brain injuries, there is no specific objective finding of a traumatic brain injury in the record. Rather, the treatment records note and repeat the claimant's allegations. He has experienced some syncopal episodes, but these have not been documented as frequent, and the restrictions caused by his symptoms have been accounted for in the [RFC]. As for his mental health treatment, there has been documented improvement with medication and the claimant's treatment regimen has been conservative.

Tr. 42.

The ALJ adequately evaluated Plaintiff's pain. She discussed at length the objective medical evidence, including issues relating to Plaintiff's knee, lower extremities, shoulder, and headaches/migraines. *See* Tr. 36-39. The ALJ determined that there was a "loose nexus" between the medical evidence and Plaintiff's pain. Despite Plaintiff's comment that the ALJ rejected Plaintiff's testimony, *see Brief* [#15] at 36-37, there is no indication that the ALJ fully rejected Plaintiff's testimony. Rather, the ALJ merely stated that Plaintiff's testimony was not fully consistent with *disabling* pain. Plaintiff does not contradict the ALJ's finding that there was "no specific objective finding of a traumatic brain injury in the record,"

Tr. 42, and, importantly, does not offer any explanation as to why one was not in the record, such as, for example, unavailability of relevant medical records. *See Brief* [#15] at 38-39.

Similarly, regarding the episodes of syncope, the ALJ acknowledged that Plaintiff experienced some and, despite finding that the record did not support the frequency which Plaintiff asserted, the ALJ still accounted for them in the RFC by assessing that Plaintiff must avoid unprotected heights, driving, operating dangerous machinery, and climbing ladders, ropes, and scaffolds. Tr. 35, 42. Regarding Plaintiff's daily activities, Plaintiff's statements about personal care, cooking, laundry, and other activities, while not demonstrating beyond any doubt that Plaintiff is not disabled, do tend to *suggest* that Plaintiff is capable of a higher level of activity than a person who is disabled under the Act. *See, e.g.*, *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ's statements regarding Plaintiff's treatment and the generally positive effect it had on Plaintiff's impairments is also supported by substantial evidence. *See* Tr. 37-39.

In short, Plaintiff argues that the ALJ erred by mischaracterizing and/or ignoring evidence favoring Plaintiff. However, the Court must "decline [Plaintiff's] invitation to reweigh the evidence to substitute our judgment for that of the Commissioner" when the ALJ has utilized the correct legal standards in her finding. *Harper*, 528 F. App'x at 892 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). The ALJ is not required to discuss every piece of evidence she considers. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). She is only required to explain and support with substantial evidence which parts of a claimant's testimony she did not fully believe and why. *See McGoffin v.*

*Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). Here, based on the Court's review of the ALJ's determinations, the Court finds that the ALJ did precisely what was required by identifying a number of inconsistencies in the record. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010). Although Plaintiff appears to want the ALJ to perform "a formalistic factor-by-factor recitation of the evidence," this is not what is required. *See Wahpekeche v. Colvin*, 640 F. App'x 781, 783 (10th Cir. 2016).

Accordingly, the Court finds no reversible error in connection with the ALJ's determination regarding Plaintiff's testimony.

**B.     Medical Opinions**

Plaintiff argues that the ALJ failed to give sufficient weight to certain medical opinions in the evidentiary record. He argues that the ALJ mis-weighed the opinions of Robin Watts, Psy.D. ('Watts"), C. McGuire, DO ("McGuire"), Mary Ellen Dooley, PMHNP-BC ("Dooley"), and Brian Goetsch, M.A. ("Goetsch").

An ALJ must give the opinion of a treating physician controlling weight only when it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* Even if a treating physician's medical opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989). Those factors are:

(1) the length of the treatment relationship and the frequency of examination;

(2)the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c).

Although the six factors listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509 F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300).

In connection with Dr. Watts's opinion, the ALJ commented:

One of the claimant's mental health providers, Robin Watts, Psy.D., prepared a medical source statement dated December 16, 2015. Dr. Watts noted that she treated the claimant weekly for major depressive disorder, severe with psychotic features and disruptive mood dysregulation. She claimed the claimant experienced severe depression, which included very low mood, suicidal ideation, irritability, low motivation, excessive guilt, feelings of worthlessness, and psychotic features. She noted the claimant also had posttraumatic stress disorder and history of traumatic brain injury. Dr. Watts noted the claimant's impairments would require him to lie down during the day; he could not travel alone as he reported blackouts; the claimant's combination of medical and mental health assessments suggest a high level of impairment that impaired both working ability and daily functioning; he reported high levels of daily pain and frequent headaches; because of his combination of medical and mental health issues the claimant could not resume work; and his disability was likely not to change.

The opinions of Dr. Watts are given little weight as they appear based largely on the claimant's subjective complaints; Dr. Watts is not a doctor of physical medicine, yet offers opinions in part related to the claimant's physical functioning; findings of disability are reserved for the Commissioner . . . ; there is a complete lack of support for such restrictive opinions in the medical evidence of record; and the claimant's treatment regimen and the objective medical evidence of record does not support such severe restrictions,

including the findings of both the psychological and physical consultative examiners, as previously addressed. As such, Dr. Watt's [sic] opinion is not entitled to controlling weight, and is given little weight.

Tr. 40 (internal citations omitted).

In connection with Dr. McGuire's opinion, the ALJ stated:

Further, Dr. C. McGuire, DO, one of the claimant's mental health providers prepared a medical source statement dated December 16, 2015 in which she noted she saw the claimant weekly for medical management. Dr. McGuire suggested that the claimant had a severe traumatic brain injury associated with black outs, along with depression, sleep issues, paranoia, some hallucinations, hypervigilance [sic], flashbacks, anxiety, panic attacks, and a history of substance abuse. She noted that the claimant's assessments included posttraumatic stress disorder, major depressive disorder with psychotic features, history of traumatic brain injury, and history of stimulant use in complete remission. The claimant's medications were noted to included [sic] Lamictal, Zoloft, Seroquel, and Hydroxyzine. Dr. McGuire reported that the claimant has experienced severe psychiatric symptoms since 2007; he could not continue or resume work; and his disability was not likely to change.

The opinions of Dr. McGuire are given little weight as they too appear based largely on the claimant's subjective complaints; findings of disability are reserved for the Commissioner . . . ; there is a lack of support for such restrictive opinions in the medical evidence of record; and the claimant's treatment regimen and the objective medical evidence of record does not support such severe restrictions, including the findings of both the psychological and physical consultative examiners, as previously addressed. Further, there is no evidence to support treatment of the claimant's allegations back to the date these opinions establish disability.

Tr. 40-41 (internal citations omitted).

With respect to Ms. Dooley's opinion, the ALJ stated:

Additionally, Mary Ellen Dooley, PMHNP-BC, one of the claimant's medical providers also prepared an opinion dated December 16, 2015. Ms. Dooley noted she treated the claimant every two to four weeks and prescribed him psychiatric medicine. She stated the claimant's assessments were major depressive disorder with psychotic features, posttraumatic stress disorder, history of traumatic brain injury, and history of stimulant use. Ms. Dooley further noted that the claimant had a disability and has been unable to work since 2007; the claimant could not stand for six to eight hours because of

obesity, gastric bypass surgery; bilateral degenerative joint disease of the knees; a shoulder disorder; and edema; the claimant could not travel alone; he could not attend to direction to be safe on a job; he would have frequent/daily issues with mood and inability to manage his posttraumatic stress symptoms; he was medically unsafe to work; he could not continue or resume work; and his disability was not likely to change.

The opinions of Ms. Dooley are given little weight as they appear based largely on the claimant's subjective complaints; Ms. Dooley is not an acceptable medical source . . . ; findings of disability are reserved for the Commissioner . . . ; there is a complete lack of support for such restrictive opinions in the medical evidence of record; and the claimant's treatment regimen and the objective medical evidence of record does not support such severe restrictions, including the findings of both the psychological and physical consultative examiners, as previously addressed.

Tr. 41 (internal citations omitted).

With respect to Mr. Goetsch, Plaintiff notes that "[w]hile the ALJ did not mention or assign specific weight to Mr. Goetsch's opinion, his findings largely mirrored the findings of the other three treating sources. Therefore, [Plaintiff] does not assert that the ALJ's failure to assign specific weight to this opinion automatically amounts to reversible error." *Brief* [#15] at 31 n.2.

The Court finds that the ALJ's decision here is sufficiently specific to make clear the weight she gave to the medical opinions and the reasons for that weight. *See Oldham*, 509 F.3d at 1258. The ALJ discounted the opinions of Dr. Watts, Dr. McGuire, and Ms. Dooley because of the "complete lack of support for such restrictive opinions in the medical evidence of record" and because Plaintiff's "treatment regimen and the objective medical evidence of record does not support such severe restrictions." Tr. 40-41; *see* 20 C.F.R. § 416.927(c)(4). For example, the ALJ discussed the results of Plaintiff's consultative examinations performed by Rebecca M. Bub, DO ("Bub") and Kristi Helvig, Ph.D. ("Helvig"). Tr. 40-41, 1050-55, 1064-70. Dr. Helvig opined that Plaintiff could concentrate and

understand simple information with some limits in memory, that Plaintiff "could currently perform independently in the competitive workplace for a sustained period of time," and that Plaintiff's "long term mental health prognosis [wa]s good if he engage[d] in consistent treatment" such as counseling. Tr. 1054-55. Dr. Bub found that Plaintiff was capable of unlimited sitting, frequent standing, occasional walking, unlimited lifting, and occasional bending, stooping, squatting, crouching, and crawling. Tr. 1070. *See Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498-1500 (10th Cir. 1992) (stating that an ALJ may rely on opinions of examining physicians over the opinions of treating physicians where she has stated specific and legitimate reasons for rejecting the opinions of treating physicians).

The ALJ also noted Plaintiff's normal results on a variety of objective tests used to assess any brain injury and his fainting episodes, including echocardiograms, EEGs, EKGs, MRIs, and blood work. Tr. 37-38, 509, 665, 667, 889, 1003, 1192-93, 1211-12, 1230-31, 1245, 1306-08, 1489-90. *See Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (stating that an ALJ may discount a treating physician's opinion when that opinion is inconsistent with other medical evidence); *see also Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [the physician's] opinion.").

In light of this evidence, the Court can find no reversible error regarding the ALJ's conclusion that Dr. McGuire, Dr. Watts, and Ms. Dooley premised their opinions about Plaintiff's mental functioning, including the impact of a possible brain injury, on Plaintiff's subjective complaints. 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents

relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *see White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2001) (stating that the ALJ reasonably discounted a treating physician's opinion which was based on the claimant's subjective assertions rather than objective medical evidence). While the Court has reversed and remanded in situations where the ALJ's *only* reason for rejecting medical opinions regarding mental health was that the medical professional had relied on Plaintiff's subjective statements, *see, e.g.*, *Wignall v. Colvin*, No. 14-cv-03327-KLM, 2016 WL 1253623, at *8 (D. Colo. Mar. 31, 2016), that is not the situation here, where the ALJ properly discussed reasons why other evidence did not fully support the subjective statements on which the medical professionals relied.

Finally, the Court notes that the ALJ did not err in discounting statements by the medical professionals that Plaintiff was unable to work, because the ultimate decision regarding disability is reserved to the Commissioner. 20 C.F.R. § 416.927(d). The Court has thoroughly examined the ALJ's opinion in this regard and finds that the ALJ has clearly based her findings on substantial evidence. *See, e.g.*, *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).") (quoting Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). The Court declines to reweigh the ALJ's determination that substantial evidence existed to contradict the opinions of these medical professionals. *Harper*, 528 F. App'x at 892.

Accordingly, the Court finds no reversible error in connection with Plaintiff's argument on the issue of the weight the ALJ gave to the medical opinions in the record.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated: September 28, 2017

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge